IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHARON ANNETTE LOVE,

    Plaintiff,

v.      Civil Case No.: PWG-17-681

COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,

    Defendant.

**REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2014-01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). [ECF No. 3]. I have considered the parties' cross-motions for summary judgment and Plaintiff's reply. [ECF Nos. 13, 15, 17]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I recommend that Plaintiff's motion be denied, that the Commissioner's motion be granted, and that the Commissioner's judgment be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Love protectively filed a claim for Disability Insurance Benefits ("DIB") on January 10, 2013, alleging a disability onset date of June 25, 2012. (Tr. 171-77). Her claim was denied

initially and on reconsideration. (Tr. 72-81, 83-96). A hearing was held on July 14, 2015, before an Administrative Law Judge ("ALJ"). (Tr. 39-71). Following the hearing, the ALJ determined that Ms. Love was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 19-37). The Appeals Council ("AC") denied Ms. Love's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Love suffered from the severe impairments of "pelvic adhesive disease, degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the bilateral hips, torn medial meniscus of the right knee status post surgery, an affective disorder, and an anxiety disorder." (Tr. 21). Despite these impairments, the ALJ determined that Ms. Love retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except that she requires the ability to alternate between sitting and standing provided that she is not off task more than 10% of the workday; she requires the use of a cane generally to stand, walk, and balance on a constant basis; she can reach, handle, feel, push, and pull no more than frequently; she can be exposed to dust, odors, fumes, gases, and pulmonary irritants no more than frequently; she can interact with coworkers, supervisors, and the general public no more than frequently; and she is able to understand, remember, and carry out instructions are [sic] for detailed and repetitive tasks, but cannot perform work that requires satisfaction of production pace.

(Tr. 23). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Love could perform several jobs existing in significant numbers in the national economy and, therefore, was not disabled. (Tr. 28-30).

Ms. Love raises two primary arguments on appeal: (1) that the ALJ failed to properly apply the "special technique" set forth in 20 C.F.R. § 404.1520a in the evaluation of her mental health impairments; and (2) that the ALJ failed to conduct a function-by-function analysis in assessing her RFC. Each argument lacks merit and is addressed below.

First, Ms. Love contends that the ALJ failed to properly evaluate her mental health impairments in accordance with the "special technique" set forth in 20 C.F.R. § 404.1520a. Specifically, Ms. Love argues that the ALJ "(1)did [sic] not provide a 'more detailed assessment' of [her] mental impairments[;] . . . (2) cited no medical evidence or testimony refuting [her] alleged mental limitations[;] . . . and (3) failed to conduct the required function-by-function anaylis [sic] of her mental health or otherwise explain how her mental health impairment would restrict her in the work place." Pl. Mot. Summ. J. 15. Pursuant to the Social Security regulations, the ALJ must employ the "special technique" when evaluating the severity of a claimant's mental impairment. 20 C.F.R. § 1520a; *see also Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). If the ALJ concludes that a mental impairment exists, he "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [his] findings." *Patterson*, 846 F.3d at 659 (quoting § 404.1520a(b)(1)). Additionally, the ALJ must document "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in § 404.1520a(c)(3)," including: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation. *Id.* (quoting § 404.1520a(e)(4)). In the first three areas of functional limitation, the ALJ must rate the degree of the claimant's restriction by using a five-point scale: none, mild, moderate, marked, and extreme. *Id.* (quoting § 404.1520a(c)(4)). In the fourth area of functional limitation, the ALJ must rate the claimant's episodes of decompensation using a four-point scale: none, one or two, three, four or more. *Id.* Next, the ALJ must determine whether the mental impairment is severe, and if so, whether it qualifies as a listed impairment. *Id.* (citing § 404.1520a(d)).

Here, the ALJ properly applied the special technique and supported his assessments with substantial evidence. In his evaluation of Ms. Love's mental impairments, the ALJ rated the degree of Ms. Love's restriction in each of the four functional areas, as required by § 404.1520a. *See* (Tr. 22). First, the ALJ found "no restriction" in Ms. Love's activities of daily living, noting that Ms. Love's "alleged limitations in this area [] are associated with her physical condition, but not her mental condition." *Id.* Second, the ALJ found "moderate difficulties" in social functioning due to Ms. Love's "difficulty going to public places alone and isolating from friends." *Id.* Third, the ALJ found "mild difficulties" with regard to concentration, persistence, or pace. Specifically, the ALJ observed that Ms. Love "testified credibly at the hearing about [her] inability to concentrate long enough to read a book as quickly as she used to, but there are no significant limitations in this area demonstrated in objective findings from her providers." *Id.* Fourth, and finally, the ALJ found that Ms. Love has experienced no episodes of decompensation. *Id.* The ALJ then concluded that, because Ms. Love's mental impairments "d[id] not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration," Ms. Love's mental impairments did not meet or equal the criteria set forth in Listings 12.04 and 12.06. *Id.*

Contrary to Ms. Love's argument, the ALJ's opinion contains sufficient analysis to allow me to review the basis for his findings. Notably, the ALJ thoroughly evaluated and cited to Ms. Love's mental health assessments and treatment records to support the RFC assessment. The ALJ, for example, noted that Ms. Love "was observed to have normal mental status except for dysphoric mood and restricted affect" during a May 2013 mental health assessment, and that Ms. Love "report[ed] little change in her status" at subsequent appointments. (Tr. 27); *see, e.g.*, (Tr. 998-1000) (noting that Ms. Love "appeared oriented to all spheres," "[t]here was no evidence of

perceptual disturbances," and that "[h]er judgment and insight was [sic] good"); (Tr. 1001) (indicating "Cooperative" behavior, "Normal Rate" and "Normal Volume" of speech, "Logical" thought organization, "Normal" attention, "Fair" concentration, and "Good" insight/judgment" during a May 29, 2013 appointment); (Tr. 1002) (indicating "Cooperative" behavior, "Normal Rate" and "Normal Volume" of speech, "Logical" thought organization, "Normal" attention, "Fair" concentration, and "Good" insight/judgment during a June 5, 2013 appointment); (Tr. 1004) (indicating "Cooperative" behavior, "Normal Rate" and "Normal Volume" of speech, "Logical" thought organization, "Normal" attention, "Fair" concentration, and "Good" insight/judgment during a June 19, 2013 appointment); (Tr. 1007) (indicating "Cooperative" behavior, "Normal Rate" and "Normal Volume" of speech, "Logical" thought organization, "Normal" attention, "Fair" concentration, and "Good" insight/judgment during a July 18, 2013 appointment). Additionally, the ALJ found that Ms. Love's "[m]ental status findings were unremarkable," based on medical evidence from her psychiatric care during 2014. (Tr. 27); *see, e.g.,* (Tr. 1393) (indicating "Normal" concentration, "Good" judgment, and "Intact short and long term" memory during an October 9, 2014 appointment). The ALJ further cited to Ms. Love's statements during a November 19, 2014 appointment, when she "report[ed] definite improvement overall in her mood and overall coping in spite of her life circumstances not chang[ing] much[,] . . . [and] describe[d] not having the highs and lows as much and getting along better with others." (Tr. 1397); *see* (Tr. 27). These findings, in addition to other records cited by the ALJ, provide substantial evidence for the ALJ's determinations regarding Ms. Love's functional limitations.

Ms. Love also argues that the ALJ erred by ignoring relevant evidence in his application of the "special technique," including: (1) the Medical Source Statement of Ability to Do Work-

5

Related Activities (Physical) of Ms. Love's treating physician, Dr. Angela Duncan, which "indicated that Ms. Love has deficits in her in her [sic] ability to maintain concentration, persistence and pace due to the sedating side effects of her pain medications and antidepressants;" (2) Ms. Love's testimony that "she does not drive because her medications cause drowsiness and disorientation;" and (3) the opinions of the "State agency consultative examiner or treating therapist in relation to the GAF scores that were indicative of serious mental health symptoms."[1] Pl. Mot. Summ. J. 16. This argument has no merit. "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Rather, the ALJ's decision "must 'contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and reason or reasons upon which it is based." *Id.* (quoting 42 U.S.C. § 405(b)(1)). Here, the ALJ's decision satisfied the statutory requirements. In addition to stating that he considered the whole record, the ALJ amply supported his decision by citing to Ms. Love's statements, mental health evaluations, and treatment records. *See id.* The ALJ therefore properly considered and discussed Ms. Love's mental impairments in accordance with the "special technique" set forth in § 404.1520a.

Turning to her next argument, Ms. Love contends that the ALJ erred in assessing her RFC because he failed to conduct a function-by-function analysis. Specifically, Ms. Love argues that, "although the ALJ concluded that Ms. Love can perform certain functions, he said nothing about her ability to perform them for a full workday." Pl. Mot. Summ. J. 16. Social Security

---

[1] Ms. Love also contends that the ALJ erroneously failed to "address why he did not consider Ms. Love's hospitalization in [2014] for suicidal ideation as an episode of decompensation." Pl. Mot. Summ. J. 16. Even if the ALJ erred by failing to qualify Ms. Love's hospitalization as an episode of decompensation, such error is harmless because it would only constitute a single episode, rather than "repeated episodes." *See* 20 C.F.R. Pt. 404, Subpt. P, App. § 12.00.

regulations provide that the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting SSR 96-8P, 1996 WL 374184, at *7 (1996)). In doing so, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see also Tucker v. Berryhill*, Civil No. TMD 16-580, 2017 WL 2719369, at *6 (D. Md. June 23, 2017). Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of the seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, at *5. Alternatively, nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including postural, manipulative, communicative, and mental activities. *Id.* at *6. Nonexertional capacity also "considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." *Id.*

In the instant case, the ALJ adequately assessed Ms. Love's RFC based on the medical evidence. Most notably, the ALJ gave "great" weight to the medical opinions of the State medical consultants, which explicitly discuss Ms. Love's function-by-function exertional limitations and support the ALJ's RFC determination. (Tr. 28); *see, e.g.*, (Tr. 77-79); (Tr. 92-94). Specifically, the State medical consultants opined that Ms. Love was capable of "stand[ing] and/or walk[ing] (with normal breaks) for a total of: 2 hours" and "sit[ting] (with normal breaks) for a total of: [a]bout 6 hours in an 8-hour workday[.]" (Tr. 93). Moreover, Dr. Duncan opined that Ms. Love was capable of "sit[ting] for four hours at a time without interruption and for four hours total in an eight-hour workday[.]" (Tr. 28); *see* (Tr. 1958). These opinions fully support

7

the ALJ's finding that Ms. Love can perform "sedentary work," which requires "periods of standing or walking [that] generally total no more than about 2 hours of an 8-hour work day" and periods of "sitting [that] *generally* total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983). After considering the above function-by-function opinions and other medical evidence, the ALJ accounted for Ms. Love's physical limitations by setting out additional restrictions. The ALJ, for example, noted that Ms. Love "requires the ability to alternate between sitting and standing . . . [and] requires the use of a cane generally to stand, walk and balance on a constant basis." (Tr. 23). In light of the evidence on the record, the ALJ properly assessed Ms. Love's RFC. Remand is therefore not required.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Plaintiff's Motion for Summary Judgment, (ECF No. 13);
2. the Court GRANT Defendant's Amended Motion for Summary Judgment, (ECF No. 17); and
3. the Court CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from

challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated:  December 13, 2017                                         /s/
                                                         Stephanie A. Gallagher
                                                         United States Magistrate Judge